First case is United States v. Soto-Zuniga. Counsel ready? Yes, Your Honor. You may proceed. Good morning and may it please the Court. Paul Barr, Federal Defenders for Mr. Soto-Zuniga. Your Honors, I would like to address the first three issues in my briefs. I'd like to begin by starting with the discovery issues, issues two and three in the briefs. Your Honor, Your Honors, the District Court abused its discretion when it denied Mr. Soto's request for discovery relating to the San Clemente checkpoint. Mr. Soto-Zuniga requested information after submitting articles in support of his position that the San Clemente checkpoint was no longer serving as a primary purpose, an immigration investigative goal, and requested information from the government that the government has in its possession to be allowed to make that argument more fully for the District Court. How many miles is the checkpoint from the border? Your Honor, the checkpoint's about 70 miles, I believe. 7-0? Yes, Your Honor. Okay. I think that's correct. And, Your Honor, it's our position that this request was material, that the items requested were material to Mr. Soto's motion challenging the constitutionality of the checkpoint, and that the District Court, therefore, abused its discretion when it declined to- What ground did the government give for opposing the discovery? Your Honor, the government's position was that the items requested were not material, and that Mr. Soto had not cleared the threshold showing required that the articles that he submitted were not sufficient in and of the checkpoint, and that the checkpoint had previously been found constitutional by the Supreme Court in Martinez-Fuerte. It's our position that this is a factual determination, that the constitutionality of the checkpoint is predicated on a factual question as to what the actual purpose of the checkpoint is, and that, as such, it requires constant revisiting. And did the Supreme Court decide that this particular checkpoint was constitutional? In Martinez-Fuerte, yes, Your Honor. That was 40 years ago. How long ago was that? Approximately 40 years ago. 4-0. Yes, Your Honor. That's a long time ago, yeah. Has the Supreme Court case law with respect to checkpoints changed in the intervening 40 years? I don't think it's changed meaningfully, Your Honor. The case of Indianapolis v. Edmond does address the constitutionality of checkpoints in general, and reiterated that it had previously found a checkpoint such as the one in Martinez-Fuerte constitutional. The issue there, though, is, again, what is the primary purpose? Is it serving a law-investigative purpose, or is there some narrowly-tailored, properly-administrated purpose? We've had intervening case law, but I'm not sure that it really has changed the standard. I think that's right, Your Honor. I'd like to turn to the third issue, Your Honor. What would be, I mean, let's say you got discovery and, or, you know, somehow were able to prove that the purpose of the checkpoint extended beyond immigration. It included contraband interdiction. Would that be covered by Martinez-Fuerte? Would it be covered, Your Honor? I think that would exceed the primary purpose that was deemed valid in Martinez-Fuerte. Yes, I think that would be highly relevant. And that was essentially our contention. Why? I mean, Martinez-Fuerte talked about immigration, right? Yes, Your Honor. But there are other kinds of things that happen at the border than immigration checks. I mean, let's say you have a truck coming through, and it has machinery, equipment, or, you know, the kind of truck that could have such equipment, and it turns out they want to check to make sure that they're not goods subject to duty. I don't know what, under NAFTA, I don't know whether we have duty coming from Mexico, but let's assume they, that's an issue, whether this is goods that's subject to customs duty, and they want to check whether it was declared and cleared customs. Is that an improper purpose under Martinez-Fuerte? Your Honor, I think that that possibly could fall within a permissible administrative search, because... The theory, I thought, was that although this is not at the border, it is the functional equivalent of a border, and that the government could do, could have the kind of check at that point that it could do right at the border. There's no doubt about it that if this stop had happened at the border, this would have been perfectly legal, right? That's right, Your Honor. Even under your theory? Yes, Your Honor. I think that's right. I mean, the government obviously has a much broader discretion at the border, at the port of entry, than it does in the interior. I think the critical point here is that as the court enunciated in Indianapolis v. Edmond, that the government can't be engaging in sort of general law investigation at points internal to the United States. So this is not a situation, I don't believe that Martinez-Fuerte rests on the proposition that this is essentially an extended border search. This is an internal checkpoint that's set up a good distance from the border for the specific purpose of immigration. And I think it's our position that anything that is outside the narrow primary purpose of investigating immigration issues exceeds the scope, the permissible scope of a checkpoint. That's what I'm trying to get at. Why does it have to be limited to immigration? Why can't which is the other big thing that happens at the border. There are two things that happen at the border. One of them, they check to make sure you are a person that is allowed to enter the United States. And the second thing that happens at the border routinely is they check to make sure you're not bringing in something that you're not allowed to bring in. Or that if, you know, if you're allowed to bring it in, that you declare it and you provide customs, you know, you comply with customs. Like large amounts of currency, drugs, you know, dutable goods, right? That's right, Your Honor. But again, the difference here is that this is an internal checkpoint. So people, when they're crossing the border, when they're coming in at ports of entry, subject themselves to a broader search. They essentially surrender their Fourth Amendment rights. That's not the case in these internal checkpoints. And so the Supreme Court has been clear, I think, that again, these general investigations are not permissible. Immigration is permissible. Something like a sobriety checkpoint would also be permissible. But general investigations into what is in this person's car, that exceeds the government's rights and violates individuals' Fourth Amendment rights. Counsel, Judge Gould, if I could interject a question, unless Judge not, here's my question. Let's say you had this, you had this discovery, and then you could prove that 50, let's say 60 percent of the arrests that arose out of that checkpoint were for drugs. And 20 percent were on immigration charges. And another 20 percent were on contraband of some kind other than drugs. So what would your argument under Indianapolis, what would it be? That is, would the majority of the arrests, or just some significant portion, have to be for legitimate non-law enforcement purposes or not border purposes? Your Honor, I think given the facts as you related them, yes. In that scenario, the checkpoint would no longer be constitutional under Martinez-Fuerte, that again, it has to be narrowly tailored to having a primary purpose designed to ferret out immigration violations. And with 60 percent of the arrests being related to drugs and another 20 percent to other contraband, I think that that would clearly establish that the primary purpose of the checkpoint is really to conduct general searches into wrongdoing that's not related to immigration. So I think that would exceed the scope of Martinez-Fuerte. Could you spend at least a minute on the issue of the discovery about the three teenagers involved in maybe the other investigation? Yes, Your Honor. That's about all the time I have left, so I'll do that now. Your Honor, we requested discovery relating to Christian Rios and his drug trafficking organization. The district court denied our request and said that we instead could rely on the stipulation. I think it's the government's position and the district court's that our requests were for materials that were not relevant. Of course, I'm the only person in this room related to this case who hasn't viewed those documents, so I don't know what they say, but it's our contention that certainly they're relevant because the stipulation came in at trial. All the parties agreed that the the documents and materials upon which that stipulation were based, the information from which the stipulation was drawn, is also relevant to our consideration. But what's really important and what I think the district court missed in its analysis is that, and what I tried to emphasize, was that these materials provide potentially rich avenues of additional investigation to be conducted by defense. And I think it's important to remember that procedurally in this case, the entire issue about Christian Rios and the investigation that the government had done into him was as a result of efforts by defense and by my investigator to look into the parties in this case. And it was us that found the affidavit by Agent Kramer. So, you know, if we had the opportunity to look into this information and to pursue these leads, it's hard to really, I mean, the sky's the limit in terms of where that can potentially lead. It can lead to additional percipient witnesses. It could certainly lead to information that corroborated Mr. Soto's story, both at the time of his arrest and during his testimony at trial. So it really hamstrings the defense when... But the basic idea you would, the basic thing you would hope to discover, I apologize for taking you over, and I hope that the Chief Judge will give you at least a moment to respond after the government's had its turn. But I think the defendant really needs to show that these three teenagers would have planted the drugs. I mean, otherwise, I mean, there's no real point. I mean, the drugs are there. Either he put them there or somebody else did. The only likely suspects for somebody else are the three teenagers, right? I mean, that's the only thing he's really hoping to find. Well, again, Your Honor, the three teenagers that are in custody are a direct link to the drug trafficking organization that really there's no dispute, is primarily responsible for these drugs. The dispute was whether or not Mr. Soto was also related to that. And that's really where this case ties in with Stieber. And I think the argument here is actually stronger because in Stieber, the defendant was saying, hey, this kind of thing is going on in this area. We don't have any specific information that a particular, or indeed any drug trafficking organization is involved in this case, but these kinds of things are happening in general. Here we have a much more focused and specific proof that indeed there is a specific drug trafficking organization at play here. So I think the discovery is highly relevant. And again, the judge abused discretion. Thank you. Thank you, Your Honor. I'll reserve whatever time I have left for rebuttal. We'll hear from the government. May it please the court. Kyle Martin for the United States. I want to start by addressing Judge Fletcher's question. And you asked, Your Honor, if the case law had changed significantly since Martinez-Forte. And the answer is that it has not. And Martinez-Forte started out with judging the checkpoint in question, which is this checkpoint, San Clemente checkpoint, based on whether there was an independent administrative justification. Sure. No, I understand that. So the question really is then has the actual consequence of the checkpoint in terms of what's actually going on significantly changed in 40 years? We have a long separation in time. The case law is the same, but the checkpoint may be operating with different consequences now. Correct, Your Honor. And in 2011 in Ortiz, this court did assume that the checkpoint was still fine, but it wasn't after a full empirical analysis, certainly. You know, you may or may not be aware of this. We had a case on the calendar I sat on, I think it was just last month, in which essentially the same issue was in a checkpoint in Arizona south of Tucson. And the defendant had sought a hearing on the question of the primary purpose of the checkpoint. And the government responded, no, you shouldn't get a hearing because you should have asked for discovery first. Are you familiar with that case? I'm not, Your Honor. Do you coordinate with the U.S. Attorney's Office in Arizona? I have not coordinated with that office, no, Your Honor. Do you know the concept of judicial estoppel? Yes, Your Honor. I mean, it seems to me that government can't have it both ways, that the fatal flaw in the Arizona case was that no discovery had been sought ahead of time. And here we have exactly what the government in Arizona said should have happened. And you say, oh, sorry, I can't have that either. Now, I'm not sure judicial estoppel applies against the government in the same way it would apply against a private party. But nonetheless, it does bother me that the government in another case tells you, well, it's been 40 years, different things may be happening in San Clemente. Your Honor, it's not our position that the defendant couldn't ask for discovery in this case. It's our position that the defendant... You couldn't get it. You could ask for it, but you couldn't have it. The defendant didn't make the showing in this particular case of materiality. Well, how is he supposed to make the showing absent discovery? What he needs to learn is what's actually happening at the checkpoint. How many of the arrests or investigations and so on have nothing to do with either illegal immigration or with contraband? And he doesn't know that information absent discovery. Well, there is a preliminary requirement that the defendant show some sort of materiality or make some sort of showing that the government has in its possession materials that are material to this defense. Well, he's saying, counsel, he's saying, depending on what the evidence shows, it's material to my theory. Correct, Your Honor, but there's still a preliminary showing. And the preliminary showing in this case that the defendant tried to make was in its entirety had two articles having to do with this checkpoint that described two seizures over a period of seven years. It didn't raise the question of whether the primary purpose of this checkpoint is no longer immigration. It simply wasn't sufficient for that. The only other article it submitted having to do with this checkpoint was involved a quote from a congressperson in 2002 that 14 immigration apprehensions were happening. Are you prepared to represent that the primary purpose at San Clemente is not aliens and interdiction of contraband? Well, our contention is that the primary purpose remains the apprehension of aliens. Yeah, and on what evidence do you say that? Well, there was a hearing in the district court. And in the district court, an officer testified that in his experience at the San Clemente checkpoint, approximately 80% of the arrests had been alien apprehensions and that he had reviewed materials from other arrests and approximately 90% of the materials reviewed had had to do with alien apprehensions. So it's our contention that the primary purpose remains alien apprehension. And it's also clear from the case law, from cases like Watson, Soto Camacho, that it's OK that there are other purposes. So in Watson, we talked a little bit about other purposes. So you have somebody who testifies to this, but the other side is powerless to introduce its own information because all the information is in the control of the government. Again, I believe there has to be a preliminary showing that there's material information out there. And the defendant can't get this broad range of discovery just by showing that there have been a couple drug apprehensions in the last 10 years or so. They would need to make some further showing of materiality. It's also our position that discovery isn't available on this defense anyway because it's not a defense to the government's case in chief. Armstrong makes it clear that Rule 16 discovery is available for defenses to the case in chief. And Chan tells us what the Ninth Circuit believes the case in chief is. It's defenses that go to the offenses that the defendant committed. In other words, in Chan, it was theft of government property. So the question was, did he actually commit this offense? The defendant here isn't challenging whether he actually committed the crime. He's trying to get the evidence suppressed, of course. Correct, Your Honor. And if it turns out that the search was illegal, it's suppressed. That's correct, Your Honor. And in the same way... And he's trying to show that it's illegal. And one of the ways he's trying to show it's illegal, maybe the only way, is he's trying to show that the primary purpose of the checkpoint is other than what the government contends, and you are entirely in control of the information that will show or not show that that's so. He's... That's correct, Your Honor. He's trying to... If he was correct, then the evidence would be suppressed. Same thing in Chan, though. I mean, they're challenging the conduct of NCIS under the Posse Comitatus Act. And the question is, are they engaging in activities that a military law enforcement branch is not supposed to engage in? And their contention is that the materials should be suppressed because NCIS is doing so. And the court says, well, despite that, despite the fact that if you're correct, the defendant would be not guilty, you don't get discovery on this. And it's similar in other ways to this case, because unlike the cases that you're aware of on dog discovery, it doesn't just deal with this case. The materials that SOTO is requesting in this case go to the government's conduct of a number of cases, every case that goes to the checkpoint. And it would require the government to produce materials relating to a number of cases. Well, now, of course, that's right. Absolutely. And the government's already produced it in the testimony of one of its officers, but in a form in which the defendant is powerless to contradict it. Well, Your Honor, I think that Chan makes it clear that this is just not discovery that's available to the defendant. It's not just available because it doesn't go to the case... Well, okay, I'm not speaking for my colleagues on this. We've not conferred ahead of time on this case. But I will say that I'm quite content to have the government, and if it's a legitimate checkpoint, I rather suspect that the proof would be that it is legitimate. I would be much more comfortable, given the number of cases that we have coming through here dealing with these checkpoints, if the government would put out its evidence, we can settle it and be done with it. Well, and, you know, perhaps this isn't the correct case for it, at least, because, again, we have to have a showing that there's some materiality there. Well, you know, if you're saying this is not the correct case for it, there's never going to be a correct case for it, because the defendants are never going to have any more information than this person has. Well, I would contend that there's more information out there than a couple of articles about Caesars at the checkpoint. And the question, ultimately, is, as you know, whether the district court abused its discretion in not ordering a really broad range of discovery based on two articles that question the checkpoint that, really, the Supreme Court and this court has confirmed for 40 years remains constitutional. And it's not just in Martinez-Forte, but throughout the Supreme Court and this court have maintained that this type of checkpoint is constitutional. Sorry, what was the case you cited for the proposition that it has to be discovery, has to be limited to the government's case in chief? Armstrong, Your Honor, is the Supreme Court case from 1996. And then Chon from 2000 is the Ninth Circuit case that applies it. I'm sorry? I thought you had Ninth Circuit authority. It's Supreme Court. Well, we can see what we can do about that. Chon, yes, Your Honor. And Chon applies Armstrong to the Posse Comitatus Act and to the activities of NCIS. So that's the Ninth Circuit authority that I'm citing. What was the Ninth Circuit case? Chon. Chon. Okay. Okay. I think your time is up. I have one question if I could take you over a little. In a nutshell, why didn't the judge permit the discovery on the three teenagers? Because if you knew who they were, conceivably one of them could have said, I was innocently going to a soccer game. But this other guy in the group of three was a bad egg. You know, he was carrying drugs, and he shoved the drugs under the mat because we decided we should get out of there. Yes, Your Honor. The judge suppressed it, or not suppressed it. The judge did not order discovery on it because he reviewed all the materials. And the court, of course, has all the materials here. And the record shows, and the public record as well, by the way, in the affidavit in support of a search warrant for Marisol Diaz. The public record shows that all three of these juveniles, none of them said that. None of the juveniles said that there was one bad actor or that there was anything to do with a courier who didn't know he had the drugs. And so the district court examined that and determined that identifying those juveniles would not aid Soto's claim that he didn't know about the drugs. In addition, the agent who was responsible for the investigation of this Christian Rios did check and see if any of these juveniles were likely to have come through the port at the same time as Soto did in this case. And there was no connection between any of these three juveniles and Soto. Thank you. Unless the court has further questions, I would submit. Thank you. Thank you. We'll give you a minute for rebuttal. Thank you, Your Honor. I'd like to address three issues. First, with respect to the Rios discovery, at the end of the day, my primary contention, Your Honor, is that the district court applied the wrong standard here. The district court essentially said is, I've reviewed the materials. There's nothing in here that names Mr. Soto. There's nothing in here that names unknowing couriers. But that's not the full scope of the Rule 16 inquiry. It's anything that's material to the preparation of the defense. And I think the district court got it wrong by applying the wrong standard. But you, not having seen the materials, you don't know, right? Well, I can only go by what the judge said. And those are the things that he said when he came out. The district court said, I've looked... So if we look at the materials and we apply what you say is a correct standard, and we find that there's nothing there, we can affirm on that basis? Well, it's hard for me to say for sure. I understand you can't argue. Right. But right. There would be no point in sending it back, right? I think that's probably right, Your Honors, that the court can look at it and apply the Rule 16 standard as it deems fit. And I think it can probably make a difference. I think you've done your job in pointing out the standard, and I guess you'll have to trust us to take a look and see whether... There's no way of sending it back and then letting you argue to the district court. This is one of those difficult situations. I would love the opportunity, but I understand that the court can probably make the same determination. Your Honor, the last two quick points I'd make, the government has raised this previously. This court has flatly rejected that. In Thomas, the court said the government made the exact same claim. The court said, we've already decided this, that Sidonio Arellano, the defendant is entitled to dog discovery. There's no requirement of materiality showing in that context for the reasons that you articulated, Judge Fletcher, that the government's putting a witness on to support its position. Defense has to be entitled to receive discovery to engage in air quotes because there's no meaningful opportunity to cross-examine. And the last thing, Your Honor, I know we didn't talk about the Fourth Amendment issue. I do urge the court to consider... I understand that the factual... I'm sorry, which issue? The Fourth Amendment issue, the first one in my brief, Your Honor. I understand that the factual findings by the district court are reviewed for clear error and that that is a deferential standard, but I think that the deference is not absolute. And when the Fourth Amendment, which is protecting fundamental rights, is being... I mean, you've had enough experience to know that these are usually losing arguments when you've got findings by a district judge. And we may look at the same record and agree with you that it's shaky or not, but aren't we bound? I mean, how would you write an opinion reversing what is factual finding? I mean, I... I understand, Your Honor. I guess all I would say is that the clear error standard articulates three criteria that the court can apply to the court's findings, the district court's findings, if they're illogical, improbable, or not supported by facts in the record. And I would contend that Agent Robreau's testimony is illogical and burden to establish probable cause in this case. And so I'd urge the court to... Okay. I'm sorry. I want to take you back to this first point. I'm sorry, the second point. The point... Well, I can't remember the order. About the three boys. Did you have an opportunity or an ability to interview those three boys? No, Your Honor. Because? The only information we had about them was contained in the affidavit. They were not But your client claims you gave him a ride. He doesn't know who they are? That's part of the issue, is that we don't know if the three individuals who are in custody are the same three individuals that were with Mr. Soto on the day of his arrest or not. They could be, in which case... I'll make my question more precise if I can. My understanding is the defense he wants to make is that these drugs were put there by one or more of the three boys. Correct. And now I'm asking you, does he know who the three boys were that he gave a ride to? No, Your Honor. I see. So these are just... Please take these... Give these boys a ride. Okay. They were friends of Rio's. I got it. So he does not know their names? Correct. Okay. Thank you, Your Honor. Okay. Thank you. Case, I'm sorry. We'll resume in a minute.
judges: Kozinski, W. Fletcher, Gould